IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| CINDY RELLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-3016-CV-S-ODS-SSA |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

### I. BACKGROUND

Plaintiff was born in 1964 and was 47 years old on the date of the ALJ's decision. She alleges she became disabled on August 20, 2004, due to back problems, depression, and osteoporosis. She has prior work experience as an industrial cleaner, a cashier, a grounds keeper, and a truck detailer. R. 44.

On April 15, 2004, Plaintiff saw Carl Claxton, D.O., for low back pain. R. 540. Plaintiff was smoking two packs of cigarettes a day and Dr. Claxon instructed her to stop smoking. R. 540, 542.

On May 20, 2004, Plaintiff saw Thomas Brooks, M.D., at the pain clinic and complained of pain in her low back and right leg. R. 214-18. Plaintiff said her primary physician would not refill her pain medication and directed her to the pain clinic. R. 215, 217. Dr. Brooks advised Plaintiff that he would not prescribe oral pain medication. R. 215. Plaintiff received a steroid injection. R. 215.

On June 2, 2004, Plaintiff underwent a magnetic resonance imaging ("MRI") scan of the lumbar spine. R. 207. The MRI revealed a mass in the left lobe of her liver consistent with a simple hepatic cyst and mild facet degenerative changes at L5-S1. R. 207. On June 8, 2004, Plaintiff returned to the pain clinic and saw Kevin Hampel, M.D. R. 210. Plaintiff reported no improvement, but Dr. Hampel noted that physical examinations indicated some improvement. R. 210. Plaintiff received another epidural injection. R. 210.

On September 16, 2004, Plaintiff went to the emergency room after injuring her back and chest in a car accident. R. 362. A thoracic spine x-ray revealed minimal scattered degenerative changes, but no acute findings. R. 364. A chest x-ray revealed hyperinflated but clear lungs. R. 364. A neck MRI the following month revealed no appreciable disease. R. 361.

On January 13, 2006, Plaintiff was examined by Dr. Claxton for back pain and anxiety. R. 549. Dr. Claxton diagnosed Plaintiff with herpes simplex, a major depressive disorder, and generalized anxiety disorder. R. 549-50. On June 9, 2006, Plaintiff was examined by Larry Allen, M.D., and diagnosed with a deteriorated lumbar back pain. R. 535.

On September 5, 2006, Plaintiff saw Dr. Allen and reported that her back pain radiated down her leg and was interfering with her job. R. 531. However, she stated that she had been doing "pretty well" for two years. R. 531. Dr. Allen referred Plaintiff to physical therapy and prescribed pain medication, muscle relaxants, and rest. R. 532.

On September 19, 2006, Plaintiff saw Dr. Claxton and complained of wheezing, chest tightness, and numbness of fingers. R. 527. Plaintiff requested pain medication, muscle relaxants, and physical therapy for her back pain. R. 527, 529. Plaintiff reported that she had continued to smoke two packs of cigarettes a day. R. 527. Dr. Claxton encouraged and instructed Plaintiff to stop smoking and opined that Plaintiff's prognosis was poor due to her lung disease. R. 529.

On November 30, 2006, Plaintiff returned to Dr. Claxton's office and complained that her "hips [were] out" and she wanted pain medications. R. 524. Plaintiff continued to smoke cigarettes and Dr. Claxton instructed Plaintiff to stop. R. 524. Dr. Claxton noted that Plaintiff looked ill due to chronic obstructive pulmonary disease ("COPD").

Dr. Claxton opined that Plaintiff was a "chronic pain medication seeker." R. 526. He continued to prescribe Vicodin and Soma (a muscle relaxant). R. 526.

On December 28, 2006, Plaintiff reported increased back pain, and Dr. Claxton informed her that smoking could cause or worsen osteoporosis. R. 520. Plaintiff admitted to smoking two packs of cigarettes a day, and once again, Dr. Claxton encouraged and instructed Plaintiff to stop smoking. R. 520. Plaintiff was diagnosed with osteopenia in January 2007. R. 438.

On March 23, 2007, Plaintiff returned to Dr. Claxton due to cold symptoms and back pain. R. 512. Plaintiff reported that she injured her back while lifting furniture. R. 512. Dr. Claxton opined that Plaintiff had chronic lung disease. R. 512. Dr. Claxton instructed Plaintiff to stop smoking and continued her medications. R. 512, 514. The next month, Dr. Claxton opined that Plaintiff's prognosis was poor due to her continued smoking habit. R. 511. Plaintiff was referred to physical therapy. R. 511.

Plaintiff saw Dr. Claxton on July 10, 2007, and July 31, 2007, complaining that that her ears hurt. R. 502, 505. Dr. Claxton noted that Plaintiff "once again" requested pain medication. R. 505. Dr. Claxton noted that Plaintiff continued to lose weight due to her COPD. R. 502. Plaintiff continued to smoke two packs of cigarettes a day, which Dr. Claxton advised against at both appointments. R. 502-05.

On February 25, 2008, Plaintiff presented to the St. John's emergency room after sustaining a fall and injuring her back. R. 343. A thoracic spine x-ray revealed a mild compression fracture that was unchanged since September 2004. R. 338.

On August 19, 2008, Plaintiff saw Dr. Claxton complaining of a cough, ear pain, and a sore throat. R. 233. Plaintiff weighed 91 pounds and Dr. Claxton opined that Plaintiff was severely underweight due to her COPD. R. 23. At the appointment, Plaintiff requested pain medications for her back pain. R. 233. Dr. Claxton instructed Plaintiff to stop smoking. R. 233. Dr. Claxton prescribed medication. R. 234.

On October 28, 2008, Plaintiff saw Dr. Claxton for an earache and toothache. R. 230. Plaintiff appeared frail and chronically ill. R. 230. Dr. Claxton instructed Plaintiff to stop smoking and prescribed medication, including Soma and Vicodin. R. 231.

On January 5, 2009, Plaintiff saw Dr. Claxton for a cough, congestion, and back pain and was diagnosed with costochondritis, obstructive bronchitis with exacerbation. R. 227-28.

On June 23, 2009, Plaintiff was examined by Dr. Claxton for back pain and was given a prescription for Vicodin. R. 246-47. In August 2009, Plaintiff reported hip and back pain. R. 243. Dr. Claxton opined that Plaintiff remained very frail and continued to lose weight due to severe lung disease. R. 243. Plaintiff reported that she had recently "clean[ed] a construction site." R. 243. Dr. Claxton assessed lumbar spring and strain and thoracic sprain and strain. R. 244.

On September 16, 2009, Plaintiff presented to St. John's emergency room after she slipped and fell onto the pavement while riding a scooter. R. 331, 335. A thoracic spine x-ray showed a compression deformity at the T6 vertebra that was unchanged since February 2008. R. 336.

Plaintiff reported to Dr. Claxton on October 26, 2009, complaining of neck pain. R. 241. Dr. Claxton noted acute torticollis in the left neck, prescribed Vicodin, and referred Plaintiff to physical therapy. R. 241-42. The next month, Plaintiff told Dr. Claxton she had been "in rehab[] due to abusing crack cocaine." R. 238. Plaintiff's weight was low, she was taking medications as directed, and she was pleased with how her medications were working. R. 238. Dr. Saxton instructed Plaintiff to stop smoking. R. 238. Plaintiff reported feeling depressed, and Plaintiff was prescribed several medications. R. 238.

Plaintiff saw Brandon Lane, a physical therapist, in November 2009, for an initial evaluation of her neck pain. R. 258-59, 313-15. Plaintiff displayed limited, painful range of motion in her neck and "4+/5" strength in her arms. R. 258. Plaintiff saw Mr. Lane four more times through December 1, 2009. R. 254-46, 259-60. In November Plaintiff tolerated treatment well, and by December she reported decreased pain. R. 256, 260. In January 2010, Mr. Lane opined that Plaintiff was improving in therapy, but did not return after her fifth of six scheduled visits. R. 302.

On January 5, 2010, Plaintiff complained to Dr. Claxton of chest discomfort. R. 603. Dr. Claxton noted that Plaintiff continued to smoke and had a harsh productive

cough. R. 603. Dr. Claxton instructed Plaintiff to stop smoking and prescribed medication. R. 603.

On January 16, 2010, Plaintiff went to St. John's emergency room after injuring her foot, knee, and face resulting from a scooter accident the previous day. R. 324. An x-ray of Plaintiff's left foot revealed a subtle avulsion fracture. R. 599. In February 2010, Plaintiff attended one physical therapy session for her foot. R. 425-28. Three weeks later, she did not return for a follow-up appointment and did not call to reschedule. R. 430.

In January 2010, Lester Bland, Psy. D., a state agency reviewing source, opined that Plaintiff did not have a medically determinable mental impairment. R. 277-87.

In March 2010, Plaintiff complained to Dr. Claxton of low back and hip pain after lifting buffet tables and working without any rest. R. 596. On examination, Plaintiff reported pain with straight leg raises. R. 597.

In September 2010, Plaintiff complained to Dr. Claxton of a pulmonary infection and chronic low back pain. R. 592. Dr. Claxton prescribed medication to treat back pain and acute bronchitis. R. 592-93. Plaintiff continued to smoke and was instructed to stop. R. 589. In December 2010, Plaintiff reported a three week history of left flank pain. R. 583. Plaintiff appeared thin and frail. R. 583. Chest x-rays revealed clear lungs and unremarkable pulmonary vascularity. R. 422.

Plaintiff continued seeing Dr. Claxton in 2011. R. 565-80. In February, Plaintiff complained of sciatic pain after pushing her car in the snow. R. 578. In April, Plaintiff reported pulling her right low back while working. R. 572. In May, Plaintiff reported right shoulder pain after shoveling creek rock at work. R. 567. Plaintiff continued to smoke cigarettes, and Dr. Claxton instructed her to stop. R. 567. Dr. Claxton again prescribed Vicodin and Soma. R. 567-68. In June, Plaintiff reported back pain resulting from landscaping and lifting heavy blocks. R. 565.

The administrative hearing was held on September 7, 2011. Plaintiff testified she cannot work due to difficulty in lifting and standing due to back pain. R. 32-33. She also testified that she had COPD, which caused difficulty in breathing with physical activity. R. 40. Plaintiff testified she was not currently on pain medication because she only takes it when her pain is "really bad." R. 34. She reported receiving pain injections

5

in the past, but said they did not offer lasting relief. R. 34-35. Plaintiff estimated that she could stand in one place for 30 to 45 minutes and could sit in a chair for 30 to 45 minutes. R. 35. She said she could lift no more than 15 pounds if she had to lift items several times a day. R. 36. She also said she would lie down for about 10 minutes every two hours to help control the pain. R. 33-34. Plaintiff testified that she is able to cook, clean, do dishes, and do yard work in "sections at a time every day." R. 36. She testified that she sometimes will ride on the lawn mower. R. 38. Plaintiff said she goes shopping with her boyfriend, but is not able to push the cart. R. 37. She testified that she spent a typical day doing a little housework, sewing for about 20 minutes at a time, watching television, and reading. R. 38-39. Plaintiff testified that at the time of her scooter accident in January 2010, she rode her scooter regularly to get around. R. 42.

The administrative law judge ("ALJ") rendered his decision on September 23, 2011. R. 20. At step one of the five-step sequential process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since August 20, 2004, the alleged onset date. R. 14. At step two, the ALJ determined Plaintiff had the following severe impairments: history of healed thoracic spine fracture; lumbar spine degenerative disc disease with sciatica; history of osteopenia; and respiratory impairments diagnosed as chronic obstructive pulmonary disease; emphysema; and recurrent bronchitis. R. 14. At step three, the ALJ found Plaintiff did not have a listed impairment. R. 15. For steps four and five, the ALJ concluded:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except stand/walk 6 hours a day for 30 hours at a time, sit 6 hours a day for 30 hours at a time, lift 20 lbs occasionally and 10 lbs frequently, occasionally bend, stoop, crouch, squat, kneel and crawl, no climbing of ladders or work at heights or around hazardous unprotected moving equipment, and avoid extreme temperatures, humidity, dust, fumes, poor ventilation and/or vibration.

R. 15. Next, the ALJ found, based the vocational expert's testimony, that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform such as a storage facility rental clerk and a core extruder. R. 18-19. Finally, the ALJ concluded Plaintiff had not been under a disability. R. 19.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision "simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. DISCUSSION

### A. Plaintiff's Credibility

Plaintiff alleges the ALJ conducted an improper credibility determination. The Court disagrees. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). The Court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). In evaluating a claimant's subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The *Polaski* factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; (7) the absence of objective medical evidence to support the claimant's complaints. *Id.*

Here, there is substantial evidence in the record to support the ALJ's finding that Plaintiff's descriptions of the symptoms and limitations during the time period are generally inconsistent and unpersuasive. First, the ALJ considered Plaintiff's lack of treatment indicative of disabling conditions. R. 17. Plaintiff's treatment was generally routine and conservative in nature and Plaintiff did not receive any recommendations for further more frequent or more aggressive treatment. At the hearing, Plaintiff testified

that at that time she was taking Soma, a muscle relaxant, but not Vicodin, which she took only when the pain got "really bad." R. 16, 34.

The record also reflects that Plaintiff failed to follow physician advice to stop smoking cigarettes. R. 16-17, 231, 238, 241, 505, 512, 524, 529, 537, 540, 567, 589, 592, 603. Dr. Claxon told Plaintiff that smoking could cause or worsen osteoporosis, opined that Plaintiff's prognosis was poor due in part to her continued smoking habit, and noted that Plaintiff understood that she needed to stop smoking. R. 246, 507, 509, 5 11, 520. . "A failure to follow a recommended course of treatment . . . weights against a claimant's credibility." *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). Plaintiff's continuance of smoking despite her complaints about her COPD and against doctor's orders to cease smoking lessens her credibility.

The ALJ also considered Plaintiff's daily activities, which he found inconsistent with debilitating conditions. Plaintiff testified she cooks, sews, shops in stores with her boyfriend, does household chores, such as dishes, and does some yard work, including using a riding mower. R. 36-39. The ALJ also considered references in the record that Plaintiff rode a scooter, landscaped and lifted heavy blocks, shoveled creek rock, and lifted buffet tables. R. 42, 324, 331, 335, 565, 567, 596. "'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'" *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)).

Finally, the ALJ considered Plaintiff's "somewhat inconsistent and often low earnings" prior to her alleged disability onset date, August 20, 2004. Although Plaintiff earned up to $21,000 a year in the years preceding her alleged onset of disability, she earned less than $9,000 a year each year before 1997. R. 138-139.

Under the facts of this case, the Court cannot conclude that the ALJ improperly weighted Plaintiff's credibility regarding his subjective complaints of pain. This Court will not substitute its opinion for that of the ALJ, who was in a better position to assess credibility. *Brown v. Charter*, 87 F.3d 963, 965 (8th Cir. 1996). Although it may be that any one of these factors alone would be insufficient to justify the ALJ's findings, collectively they serve as substantial evidence supporting the ALJ's decision.

B. RFC Determination

Plaintiff also the ALJ failed to sufficiently link his RFC finding to the medical record. The Court disagrees.

An ALJ is not required to list every limitation along with a discussion of the evidence supporting it when determining Plaintiff's RFC. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Instead, the ALJ makes an RFC determination "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney*, 228 F.3d at 863.

In this case, the ALJ identified substantial medical evidence supporting his RFC determination and accounted for Plaintiff's limitations by restricting her to light work as defined in 20 CFR 404.1567(b) and 416.967(b) except stand/walk 6 hours a day for 30 hours at a time, sit 6 hours a day for 30 hours at a time, lift 20 lbs occasionally and 10 lbs frequently, occasionally bend, stoop, crouch, squat, kneel and crawl, no climbing of ladders or work at heights or around hazardous unprotected moving equipment, and avoid extreme temperatures, humidity, dust, fumes, poor ventilation and/or vibration. The ALJ considered the "entire medical record," including objective medical evidence, Plaintiff's course of treatment, and her daily activities before making a determination on Plaintiff's RFC. R. 15-18. The Record contains substantial evidence supporting the ALJ's RFC finding.

IV. CONCLUSION

There is substantial evidence in the Record to support the ALJ's decision. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

DATE: October 24, 2013

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT